UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

FRANK E. VOTH

                                    Plaintiff,

            v.

MARK NOOTH; WILLIAM KING;
DANIEL BANNER; COLETTE PETERS;
GREGORY JONES; and MARICELA
ROJAS,

                        Defendants.

Civ. No. 2:14-CV-01855-AC

FINDINGS AND
RECOMMENDATION

_____

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Frank E. Voth ("Voth") brings this action pursuant to 42 U.S.C. § 1983 and OR.
REV. STAT. §§ 421.105 and 137.275 against various Oregon Department of Corrections ("DOC")
employees (collectively "Defendants") alleging violations of his constitutional and civil rights
while incarcerated in the Oregon state prison system.  Specifically, in his first claim for relief,
Voth alleges Defendants William King ("King"), Daniel Banner ("Banner"), Colette Peters

("Peters"), and Gregory Jones ("Jones") violated his Eighth and Fourteenth Amendment rights, as well as OR. REV. STAT. 421.105(2), by aiding and allowing Banner to physically injure Voth while performing pat-down searches, including allegations by Voth that Banner actively slammed his hands into Voth's groin area and excessively tightened Voth's wrist restraints in an effort to restrict blood flow to his hands and fingers.  Voth also asserts that Mark Nooth ("Nooth"), Superintendent of Snake River Correctional Institution ("SRCI"), permitted King to unjustifiably file a misconduct report against Voth in retaliation for Voth's decision to file an inmate discrimination complaint pertaining to Banner's alleged physical violence.

Voth's second claim alleges that Defendants King, Banner, Peters, and Jones conspired with known and unknown prison officials to physically injure Voth while housed in the Administrative Segregation Unit ("ASU").  Voth further asserts that he has written inmate communications and filed grievances in an effort to notify prison officials of the physical injuries being inflicted upon him. Additionally, Voth argues that he has repeatedly requested to be released from the ASU and transferred to Oregon State Correctional Institution ("OSCI") pursuant to an alleged consent decree that the Oregon Department of Justice filed in state court. Voth brings his second claim pursuant to the Eighth and Fourteenth Amendment, OR. REV. STAT. 421.105(1) and (2), and various provisions of the Oregon Constitution.

Finally, in his third claim, Voth alleges Maricela Rojas ("Rojas"), SRCI's law librarian, improperly viewed and erased all of Voth's legal pleadings contained on his personal thumb drive in contravention of his First and Fourteenth Amendment rights, as well as OR. REV. STAT. 137.275.

Defendants now move for summary judgment on all of Voth's claims, arguing he failed to properly exhaust available administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). For the reasons stated below, Defendants' motion should be granted.

*Background*

On April 4, 2014, Voth, a DOC inmate who at the time was housed at Oregon State Penitentiary ("OSP"), submitted an inmate grievance form, Grievance No. OSP-2014-05-026, requesting he be transferred to OSCI pursuant to a state court order. (First Am. Compl. Ex. 2.) In the same grievance, Voth also claimed that the Oregon Department of Justice had, based on an apparent consent decree,[1] agreed not to transfer Voth back to Eastern Oregon Correction Institution, Two Rivers Correctional Institution, or SRCI. (First Am. Compl. Ex. 2.) Voth's grievance was returned to him because he failed to show "how there ha[d] been a misapplication of a directive/procedure." (First Am. Compl. Ex. 1.) Based on the record, it appears Voth took no further action with respect to this grievance and at some point shortly thereafter, was transferred from OSP to SRCI and assigned to the ASU. (First Am. Compl. Ex. 7, at 1.)

In late 2014, following Voth's transfer to SRCI, he submitted at least five inmate communication forms requesting transfer to OSCI. (First Am. Compl. Exs. 3, 7, 15 & 17; Voth's Mot. for Summ. J. Ex. 12A.) Voth argued, apparently based on the same alleged consent decree, that the Oregon Department of Justice had assured him that he would be transferred to OSCI, not SRCI, in an effort to redress the actions of two SRCI prison officials who had allegedly

---

[1]Voth has not provided the court with a consent decree from the Oregon Department of Justice. Voth has attached an exhibit from Robert E. Sullivan ("Sullivan"), Oregon's Senior Assistant Attorney General, in which Sullivan acknowledges Voth has requested transfer to OSCI. (Voth's Mot. for Summ. J. Ex. 9A-B.) While Sullivan notes Voth's request to transfer, Sullivan points out that there is no guarantee Voth will be transferred. (Voth's Mot. for Summ. J. Ex. 9A-B.)

FINDINGS AND RECOMMENDATION        3                        {TJK}

handcuffed Voth and repeatedly slammed his head into the prison-cell wall a number of years earlier. (First. Am. Compl. Ex. 7, at 1.)

During this same time – late 2014 – Voth also submitted a number of inmate communication forms notifying prison officials that employees at SRCI were sexually, physically, and verbally abusing him; were failing to wear hair nets when serving food, leading to hair in Voth's food; and were apparently locking Voth in the shower and leaving him to stand in dirty water for over an hour each time he showered. (First. Am. Compl. Exs. 7, 19 & 20; Voth's Mot. for Summ. J. Ex. 55A-B, 57A-B.) In the inmate communication forms, Voth claimed that these actions violated DOC rules, various Oregon statutes, Oregon case law, and his Eighth and Fourteenth Amendment rights. (First Am. Comp. Exs. 7, 19 & 20.)

Aside from Grievance No. OSP-2014-05-026, which was returned to him for failure to adhere to procedural rules, it appears from the record that Voth did not formally grieve these issues, a right provided to him under DOC's grievance review system. (*See* First Am. Compl. Exs. 1-20; Taylor Decl. ¶ 6.) Rather, the record shows that Voth's only attempt at administrative review was through submission of the aforementioned inmate communication forms, a process entirely separate from a formal grievance and "designed for inmate use in communicating with employees, volunteers, or contractors," and, where appropriate, receiving responses from the same. (*See* First Am. Compl. Exs. 1-20; Taylor Decl. Attach. 2, at 2.)

Separate from the above complaints, in late October 2014, Voth filed an inmate communication form and an inmate discrimination complaint, Discrimination Complaint No. SRCI-2014-10-185, alleging Banner was physically abusing and assaulting him. (Taylor Decl. ¶ 3; Attach. 10, at 1, 2.) Voth alleged Banner slammed his hands into Voth's groin area "to intentionally cause [] pain." (Taylor Decl. Attach. 10, at 1.) Moreover, Voth charged that

Banner placed wrist restraints so tight that Voth's fingers and hands became numb, ended Voth's recreation time fifteen minutes early, and intentionally stepped on Voth's heels as he escorted Voth up the stairs to his cell.  (Taylor Decl. Attach. 10, at 1.)  Voth, an African-American, argued that he received this treatment because of his race.  (Taylor Decl. Attach. 10, at 1.)

On November 4, 2014, King received Voth's inmate communication form addressing Banner's alleged abuses and attempted to discuss the incident with Voth.  (Taylor Decl. Attach. 7, at 4.)  Voth, however, refused to discuss the matter, telling King he had nothing to say.  (Taylor Decl. Attach. 7, at 4.)  Consequently, King proceeded to discuss the incident with Banner, who told King that Voth was given his full recreation time and, upon securing Voth in wrist restraints, Voth became aggressive, "demanding to know why he had been brought in so early." (Taylor Decl. Attach. 7, at 4.)  Banner stated that he told Voth he had been provided his allotted time and thereafter began to escort him back to his cell.  (Taylor Decl. Attach. 7, at 4.)  Banner acknowledged that, as he was escorting Voth up the stairs, he "accidentally stepped on his shoe." (Taylor Decl. Attach. 7, at 4-5.)  Banner stated that he immediately apologized and "continued with the escort." (Taylor Decl. Attach. 7, at 5.)  According to Banner, Voth was then secured in his cell and no further communication took place.  (Taylor Decl. Attach. 7, at 5.)

In King's misconduct report, he states that after inquiring about the incident with Banner, he intended to document the allegation as unfounded but, the following day, was informed by the grievance coordinator that Voth had filed the aforementioned inmate discrimination complaint, which was also directed at Banner.  (Taylor Decl. Attach. 7, at 5.)  As a result, King asked prison staff to escort Voth to his office in an attempt to discuss the matter once more.  (Taylor Decl. Attach. 7, at 5.)  Voth agreed, and King maintains that Voth "was immediately on the defensive and appeared upset" as the two attempted to discuss the matter.  (Taylor Decl. Attach 7, at 5.)

Voth told King that he did not know why he was being punished for the incident. (Taylor Decl. Attach. 7, at 5.) King explained to Voth that he was not punishing Voth for lodging the complaint but that Voth would be held accountable should the complaint be deemed false. (Taylor Decl. Attach. 7, at 5.) According to King's misconduct report, Voth then ended the conversation by telling King he intended to pursue the matter in court. (Taylor Decl. Attach. 7, at 5.)

Apparently due to a lack of information provided by Voth, as well as the testimony from Banner, and the fact that Voth did not seek medical treatment for the alleged injuries he suffered on Banner's behalf, King concluded that Voth was "attempting to provide false information towards [] Banner" in an effort to litigate against the state. (Taylor Decl. Attach 7, at 5.) King therefore informed Voth he would be disciplined for providing false or misleading information. (Taylor Decl. Attach. 7, at 7.)

After being disciplined, Voth filed Inmate Grievance Form No. SRCI-2014-11-048, stating King had disciplined him for filing the previously mentioned inmate discrimination complaint. (Taylor Decl. Attach. 7, at 1.) The inmate grievance form requested that King's superiors inform King that he cannot punish Voth "for using established grievance procedures." (Taylor Decl. Attach. 7, at 1.) As required by DOC's grievance review system, King responded to Voth's grievance, explaining that he had received Voth's inmate communication form, been notified of his discrimination complaint, and attempted to discuss the incident with Voth, who initially refused to speak to him but did so after being escorted to King's office. (Taylor Decl. Attach. 2, at 7; Attach. 7, at 7.) King went on to explain that he disciplined Voth because it was apparent to him "that the events had occurred as the staff involved had described" and that Voth

had therefore provided false or misleading information.  (Taylor Decl. Attach. 7, at 7.)  Voth

elected not to appeal King's initial grievance response.  (Taylor Decl. ¶ 15.)

Meanwhile, on December 8, 2014, Nooth, the individual tasked with officially

responding to Voth's inmate discrimination complaint, provided Voth with his findings,

concluding, based on interviews with King, Banner, and a prison employee working alongside

Banner, that there was insufficient evidence to support Voth's allegations of discrimination.

(Taylor Decl. Attach. 10, at 4-5.)  Voth was notified of his right to appeal the finding, and he did

so; however, Voth's appeal was returned to him because he failed to attach Nooth's response.[2]

(Taylor Decl. Attach. 10, at 5-8.)  Voth did not resubmit his appeal.  (Taylor Decl. ¶ 25.)

At around the same time, Voth also filed grievances pertaining to Rojas's handling of

Voth's personal thumb drive, which purportedly contained his private legal documents.  (Taylor

Decl. Attach. 6, at 1.)  Voth's first grievance, Grievance No. SRCI-2014-06-076, filed on June

10, 2014, stated that Rojas told Voth she had deleted all of his pleadings contained on the

personal thumb drive.  (Taylor Decl. Attach. 6, at 1.)  Voth's pleadings apparently pertained to

several cases pending at the time.  (Taylor Decl. Attach. 6, at 1.)  In the grievance, Voth stated

that when he inquired as to who authorized Rojas to read and delete his confidential legal

information, Rojas told him inmates like Voth, who are housed in the ASU, are not afforded the

same rights to confidentiality in legal material as general-population inmates.  (Taylor Decl.

Attach. 6, at 1.)

---

[2] Voth acknowledges his appeal pertaining to the discrimination complaint has not been processed; however, he argues it has not been processed because he has filed this action.  (Voth's Resp. to Def.'s Mot. for Summ. J., at 3-4.)  The record, however, clearly indicates Voth's appeal was returned to him because of his failure to attach the necessary documents.  (*See* Taylor Decl. Attach. 10, at 6.)

Four months later, Voth had yet to receive a response regarding his June 10 grievance against Rojas. Consequently, he submitted a second grievance form, again given the grievance number SRCI-2014-06-076, seeking an answer as to why he had not received a response within the forty-five-day timeframe required under DOC's grievance review system. (Taylor Decl. Attach. 6, at 3; Attach. 2, at 7.) On October 28, 2014, Voth received a response from the grievance coordinator, who informed Voth that his grievance had been returned without response because Voth filed a lawsuit pertaining to the issue and DOC does not allow inmates to grieve an issue that the inmate is pursuing in federal or state court. (Taylor Decl. Attach. 6, at 4.)

Later, in December 2014, Voth sent a third grievance form, Grievance No. SRCI-2014-12-066, stating he sent Rojas a special law library request form asking that she provide him with the legal material she copied from his thumb drive prior to erasure, but Rojas refused to do so.[3] (Taylor Decl. Attach. 8, at 2.) Once again, Voth's grievance was returned to him because Voth did not provide sufficient information to process the grievance, namely, forgetting to provide the date and to attach the special law library request form. (Taylor Decl. Attach. 8, at 1.) Voth failed to resubmit his grievance. (Taylor Decl. ¶ 16.)

*Standards*

Courts in the Ninth Circuit "treat an exhaustion defense under the PLRA within the framework of the Federal Rules of Civil Procedure." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (overruling *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003)). This means that a court should grant a motion for summary judgment premised on the prisoner's failure to exhaust administrative remedies "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

---

[3]It is unclear from the record whether Rojas did indeed copy the material on Voth's thumb drive prior to expunction.

Specifically, in a case when the movant argues the prisoner failed to exhaust nonjudicial remedies, the movant must produce evidence, which, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Albino*, 747, F.3d at 1169. If the movant meets his burden, the prisoner must "go beyond the pleadings [ ] by her own affidavits . . . [to] designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). In a failure-to-exhaust case that means the prisoner must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747, F.3d at 1172. On summary judgment, the court is bound to view all facts in a light most favorable to the prisoner and must draw all justifiable inferences in the prisoner's favor. *Narayan v. EGI, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010).

## I. Exhaustion

The PLRA requires that a prisoner exhaust available administrative remedies before filing suit in federal court regarding prison conditions. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a) (2008)). Failure to exhaust under the PLRA is an affirmative defense that must be raised by the defendants, who bear the burden of proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 211-12 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

Exhaustion must be proper, meaning the "grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (2009). Moreover, to properly exhaust, the grievant must complete the administrative process in accordance with the prison's own grievance procedures. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). This means the grievant must comply with the prison grievance system's "critical

procedural rules" and appeal the grievance decision to its highest level within the grievance system prior to filing an action in court. *Id.* at 95; *see also Jones*, 549 U.S. at 218 (stating a prisoner must complete the administrative process in accordance with the prison's procedural rules). Simply put, the grievant must use all steps the prison administration holds out, and do so properly. *Woodford*, 548 U.S. at 90.

However, while the inmate must comply with the exhaustion requirement, the defendant has the burden of raising nonexhaustion as an affirmative defense and to "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. Once the defendant has carried that burden, the prisoner must provide evidence showing that the existing and generally available administrative remedies were effectively unavailable to him, for instance, by showing that prison officials declined to hear the merits of a grievance, or obstructed attempts to exhaust, or prevented inmates from exhausting because procedures for processing grievances were not followed. *Id.* at 1172-73; *see also Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) (standing for the proposition that the prisoner must show that administrative procedures were unavailable to him by showing, for instance, that prison officials obstructed the prisoner's attempt to exhaust or that the prisoner was prevented from exhausting because prison officials did not follow internal procedurals).

Oregon Administrative Rules 291-109-0100 through 291-109-0190 describe the three-level internal grievance and appeal procedure for inmates confined in DOC facilities. OR. ADMIN. R. 291-109-0100 *et seq.* (2016). Inmates are informed of the grievance process during admission and orientation, and the procedures are also explained in the inmate handbook given to each inmate. (Taylor Decl. ¶ 6.) Inmates are encouraged to first address their concerns with DOC staff through informal written or verbal communication. OR. ADMIN. R. 291-109-020

(2016). If informal resolution is unsuccessful, an inmate may initiate a grievance by filing a DOC-provided form within thirty days of the incident giving rise to the complaint. OR. ADMIN. R. 291-109-0150 (2016). An inmate may not grieve, among other things, "[c]laims or issues the inmate has pursued or is pursuing in pending litigation in state or federal court." OR. ADMIN. R. 291-109-0140(3)(h) (2016). If the inmate properly grieved and is not satisfied with the initial grievance response, he or she may appeal to the functional unit manager within fourteen days of receiving the grievance response. OR. ADMIN. R. 291-109-0170(1) (2016). If the first appeal is denied, the inmate can appeal the functional unit manager's decision to the Assistant Director or designee, whose decision is final and not subject to further administrative review. OR. ADMIN. R. 291-109-0170(2) (2016).

When pertinent, an inmate may pursue administrative remedies through a separate process specifically reserved for discrimination issues. Oregon Administrative Rules 291-006-0005 through 291-006-0045 describe the discrimination complaint process, which is similar to the grievance process. If an inmate believes he has been subjected to discrimination on the basis of race, color, national origin, sex, religion, age, marital status, or handicap, the inmate, or a representative, may file a written complaint through the prison department's discrimination complaint process. OR. ADMIN. R. 291-006-0015 (2016). The complaint must be submitted to the functional unit manager of the unit in which the inmate is assigned, and must be filed within thirty days of the alleged act of discrimination. OR. ADMIN. R. 291-006-0031 (2016). If, after receiving a response from the functional unit manager, the inmate is dissatisfied, the inmate may appeal the response to the Inspector General or designee within fourteen days from the date the response was sent to the inmate by submitting an inmate communication form to the discrimination complaint coordinator specifically requesting review. OR. ADMIN. R. 291-006-

0040 (2016). "The inmate must attach the original discrimination complaint, original attachments and the department's response" to the inmate communication form; the forms will then be forwarded to the Inspector General or designee. OR. ADMIN. R. 291-006-0040(1) (2016). The decision by the Inspector General or designee is final. OR. ADMIN. R. 291-006-0040(3) (2016). As with the general grievance process, the prisoner is required to exhaust all administrative remedies prior to bringing suit in federal court. *See Fabelo v. Andrews*, No. 05-228-ST, 2006 WL 2487320 (D. Or. Aug. 28, 2006) (standing for the proposition that a prisoner who lodges a discrimination complaint must exhaust all available administrative remedies prior to filing suit in federal court).

### A. Voth's First Claim for Relief

In Voth's first claim, he argues Defendants King, Banner, Peters, and Jones inflicted cruel and unusual punishment against him either by participating in or allowing Banner to physically assault him. Additionally, he asserts that Nooth permitted King to retaliate against him by unjustifiably filing a misconduct report against Voth after Voth filed an inmate discrimination complaint pertaining to Banner's alleged physical violence.

Voth filed Discrimination Complaint No. SRCI-2014-10-185 on October 28, 2014. In it, Voth described the manner in which Banner was physically abusing and assaulting him. Voth also stated his belief that he received this treatment because of his race. On December 8, 2014, Nooth provided Voth with his findings, which stated that there was insufficient evidence to support Voth's allegations of discrimination. Voth appealed Nooth's response; however, his appeal was returned to him because Voth failed to attach Nooth's response, as required by OR. ADMIN. R. 291-006-0040(1). Voth did not resubmit his appeal, thus failing to appeal the decision to its highest level within the grievance system prior to filing an action in court.

Voth also filed Grievance No. SRCI-2014-11-048, stating King had disciplined Voth for filing the above-mentioned discrimination complaint. In accordance with the internal-grievance process, King responded to Voth's grievance, and Voth elected not to appeal King's response to the functional unit manager, as is allowed under OR. ADMIN. R. 291-109-0170(1). Much like his discrimination complaint, Voth failed to appeal the grievance decision to its highest level within the grievance system prior to filing this action.

There is no indication in the record that Voth submitted any other grievances pertaining to his first claim for relief, let alone any grievances that made full use of DOC's administrative process — nor has Voth provided the court with any evidence that the existing and generally available administrative remedies were effectively unavailable to him. Instead, with respect to his first claim, the records shows Voth did not use all of the administrative steps made available to him prior to bringing this action.

B. *Voth's Second Claim*

Much like his first claim, Voth's second claim alleges that Defendants King, Banner, Peters, and Jones conspired with known and unknown prison officials to physically injure Voth while he was housed in the ASU. Additionally, Voth alleges that he has written inmate communications and filed grievances attempting to notify prison officials of the physical injuries being inflicted upon him. Lastly, Voth argues he repeatedly requested to be released from the ASU and transferred to OSCI pursuant to an alleged consent degree that the Oregon Department of Justice filed in state court.

Aside from Discrimination Complaint No. SRCI-2014-10-185 and Grievance Form No. SRCI-2014-11-048, discussed above, as well as Grievance No. OSP-2014-05-026, which was returned to him because he failed to show "how there ha[d] been a misapplication of a

directive/procedure," (First Am. Compl. Ex. 1), the record contains no evidence that Voth properly grieved these issues, as is required under the PLRA. Voth filed a number of inmate communication forms pertaining to these issues, but, by themselves, such forms are not "attempts to grieve." *See Tolle v. Or. Dep't of Corr.*, No. 2:11-cv-00980-MO, 2012 WL 775060, at * 2 (D. Or. Mar. 6, 2012) (holding that inmate communication forms are not "attempts to grieve") (internal quotations omitted). Thus, Voth simply failed to comply with the procedural rules made available to him. In fact, Voth appears to acknowledge that he has not exhausted his administrative remedies but argues that any grievances he has submitted cannot be addressed because he filed suit, causing the grievance process to cease pursuant to OR. ADMIN. R. 291-109-0140(3)(h). (*See* First Am. Compl., at 5; Resp. to Def.'s Mot. for Summ. J., at 3-4.) Voth thus asserts that DOC's administrative remedies are effectively unavailable to him and argues that in *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010) the Ninth Circuit recognized administrative exhaustion may be excused when administrative remedies are effectively unavailable.

In *Nunez*, the inmate properly initiated the grievance procedure and was advised by the warden that he would need to review a particular regulation in order to appeal his grievance. *Id.* at 1220. However, the warden cited the incorrect regulation which actually referred to material unavailable to inmates. *Id.* Even so, the inmate diligently attempted to access the regulation for several months. *Id.* at 1226. The court concluded that, based on the warden's specific response to the grievance, the inmate "believed in good faith that [the cited regulation] was necessary, not merely useful, for preparing his appeal." *Id.* at 1225. The court accordingly held that "[r]ational inmates cannot be expected to use grievance procedures to achieve the procedures' purpose when they are misled into believing they must respond to a particular document in order to

effectively pursue their administrative remedies and that document is then not available." *Id.* at 1226 (citations omitted).

Here, by contrast, there is no indication Voth was misled. Rather, Voth simply did not comply with the grievance system's rules; indeed, he failed to submit grievances pertaining to a number of issues, and with respect to the grievances or discrimination complaints he did submit, he failed to appeal the decisions to the highest level within the grievance system *prior* to filing an action in court. The PLRA requires completion of the administrative process in accordance with the prison's own grievance procedures. By electing to pursue the issues in court instead of first using all available administrative remedies, and doing so in accordance with DOC's grievance procedures, Voth did not properly use all of the steps DOC held out to him. Thus, unlike the inmate in *Nunez*, administrative remedies were available to Voth, but he elected to bypass them.

### C.  *Voth's Third Claim*

Last, Voth contends Rojas improperly viewed and erased all of Voth's legal pleadings contained on his personal thumb drive. Voth filed three grievances related to this matter. First, Voth filed Grievance No. SRCI-2014-06-076 on June 10, 2014, arguing Rojas told Voth that she had deleted all of his pleadings contained on Voth's personal thumb drive. Four months later, Voth submitted a second grievance form – which was given the same grievance number – because he had not received a response to the June 10 grievance. Thereafter, Voth received a response from the grievance coordinator, who informed Voth that his grievance had been returned without response because Voth filed a lawsuit pertaining to the issue and DOC does not allow inmates to grieve an issue that the inmate is pursuing in court. Finally, Voth sent a third grievance form, Grievance No. SRCI-2014-12-066, requesting Rojas provide him with the legal

material she copied from his thumb drive prior to erasure.  This grievance was returned because Voth failed to provide the date and to attach the relevant document.  Voth failed to resubmit the third grievance.

Voth did not pursue his first and second grievance, Grievance No. SRCI-2014-06-076, to its highest level within the grievance system.  Instead, he attempted to bypass SRCI's available administrative remedies by pursuing the issue in court, thereby skirting SRCI's procedural rules, which make clear that prisoners are prohibited from pursuing an issue in court while simultaneously grieving the issue within the prison's administrative system.  Voth's attempt to bypass administrative remedies left SRCI's administration with no choice but to dismiss the grievance on procedural grounds prior to exhaustion.

As with his second claim, Voth argues that administrative remedies are effectively unavailable to him because he filed suit in court, causing the grievance process to cease.  As explained, the PLRA requires adherence to the prison's grievance procedures *prior* to filing an action in court.  By simultaneously pursuing the issue he was grieving in court, Voth did not comply with all of DOC's grievance procedures, which expressly prohibit such action.  Properly compliance with all administrative remedies is a perquisite to filing an action in court, and Voth failed to adhere to that requirement.

As to his third grievance, Grievance No. SRCI-2014-12-066, Voth failed to comply with the prison grievance system's critical procedural rule by failing to provide the date and attach the relevant documents to the grievance form.  There is no indication that prison officials would have declined to hear the merits of his grievance or attempted to obstruct, exhaust, or prevent Voth from resubmitting his grievance because procedures for processing grievances were not followed.  Instead, by failing to resubmit his grievance, Voth plainly failed to properly use all of

the steps DOC held out to him, despite the fact that administrative remedies were available. Consequently, with respect to his third claim, the records shows Voth did not did exhaust his administrative remedies.

*Conclusion*

For the reasons stated above, Defendants have shown that Voth had administrative remedies available and that he did not exhaust those remedies with respect to all three of his claims. The burden thus shifted to Voth to point the court to evidence showing that the existing and generally available administrative remedies were effectively unavailable to him. For the reasons stated above, Voth failed to meet that burden on all three of his claims. Consequently, Defendants' Motion for Summary Judgment (Dkt No. 57), based on the PLRA's exhaustion requirement, should be GRANTED.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 14, 2016. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever is earlier, the Findings and Recommendation will go under advisement.

DATED this 27th day of April, 2016.

JOHN V. ACOSTA
United States Magistrate Judge